IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-00986-PAB-SBP

SYDNEY HAYES, and
TEDDY RABURN, on behalf of themselves and all other similarly situated

      Plaintiffs,

v.

DC STAR SECURITY AGENCY INC., d/b/a Siegun Security, and
DAVID LEE, individually,

      Defendants.

---

**ORDER**

---

This matter comes before the Court on Defendants' Motion to Compel Arbitration

[Docket No. 19].  Plaintiffs filed a response.  Docket No. 27.  Defendants filed a reply in

support of their motion.  Docket No. 30.

## I.  BACKGROUND

Plaintiffs Sydney Hayes and Teddy Raburn worked as security guards for DC

Star Security Agency, Inc. ("DC Star").  Docket No. 1 at 1, ¶ 1.  While DC Star classified

plaintiffs as independent contractors, plaintiffs assert that they were employees of DC

Star.  *Id.* at 7, ¶¶ 35-36.  Plaintiffs claim that DC Star directed and controlled their day-

to-day activities and made them adhere to standardized processes.  *Id.* at 6, ¶ 29.  Mr.

Hayes worked for DC Star from June, 2022 to March, 2025.  *Id.* at 7, ¶ 32.  Mr. Hayes

alleges that he was initially classified as an employee, but approximately 3-4 months

after the start of his employment, he was reclassified as a 1099 independent contractor.

*Id.*, ¶ 33.  Mr. Raburn worked for DC Star from December, 2022 to March, 2025.  *Id.*,

¶ 34.  Mr. Raburn was classified as a 1099 independent contractor throughout his

employment.  *Id.*, ¶ 35.  Plaintiffs aver that they regularly worked 77 hours to 93 hours

per week.  *Id.* at 8, ¶ 38.  Plaintiffs allege that defendants misclassified them as

independent contractors to circumvent federal and state wage laws, including the

payment of overtime.  *Id.* at 7, ¶ 37; Docket No. 27 at 1.  Plaintiffs bring suit on behalf of

themselves and all others similarly situated against DC Star and David Lee,[1] DC Star's

owner, for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*,

the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order"), 7 C.C.R.

1003-1, and the Colorado Wage Claim Act ("CWCA"),[2] Colo. Rev. Stat. § 8-4-101 *et

seq.*  Docket No. 1 at 9-12, ¶¶ 47-73

Defendants state that plaintiffs had to sign a Private Security Contractor

Agreement as a condition of their employment.  Docket No. 19 at 6.  The parties refer to

this agreement as the "IC Agreement," and the Court adopts this terminology.  *Id.*;

Docket No 27 at 2 n.1.  It is undisputed that each plaintiff signed the IC Agreement.

Docket No. 19 at 6; Docket No. 19-2 at 4; Docket No. 19-3 at 4.  The IC Agreement

contains an arbitration clause, that states:

> ARBITRATION
>
> The parties hereto agree to refer the following matters and responsibilities
> to an Arbitrator[.]
>
> To resolve all disputes and differences under the original contract; to
> review the terms of the contract and determine the amount payable by one

---

[1] Defendants state that David Lee's name is actually David Lee Cahow but note
that his last name is not included in the case caption.  Docket No. 19 at 5 n.1.

[2] Plaintiffs refer to the CWCA as the Colorado Wage Act.  *See* Docket No. 1 at
11.

party to the other, if any; to make provisions for the payment of debts and liabilities of the business, including income tax liabilities[.]

In the event there are any disputes or controversies that arise between the parties pursuant to the terms of the aforesaid Agreement, then the parties are waiving their right to litigate these issues in court and instead elect to have these disputes resolved through arbitration.

The parties agree that any disputes are to be arbitrated through the American Arbitration Association and that the parties agree to abide by the rules of the Commercial Arbitration Rules of the American Arbitration Association.

WHEREFORE, it is agreed that all claims and disputes arising or relating to the Agreement are to be settled by binding arbitration in Colorado.  Said arbitration is to be resolved through the Commercial Arbitration Rules of the American Arbitration Association and the parties agree to abide by these rules.

Any decisions or award resulting from any such arbitration shall be issued in writing, and the arbitrator shall be mutually selected pursuant to the Commercial Arbitration Rules of the American Arbitration Association.  Any arbitration award may be confirmed in a court of competent jurisdiction.

Docket No. 19-2 at 3-4; Docket No. 19-3 at 3-4.

On June 2, 2025, defendants filed a motion to compel arbitration.  Docket No. 19.  Plaintiffs filed a response, Docket No. 27, and defendants filed a reply.  Docket No. 30.

## II.  LEGAL STANDARD

The Federal Arbitration Act (the "FAA") "applies to all arbitration agreements 'involving commerce,' 9 U.S.C. § 2, and "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)).  It "reflect[s] both a liberal . . . policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."  *Sanchez v. Nitro-Lift Techs., L.L.C.,*

3

762 F.3d 1139, 1145 (10th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Accordingly, courts "must rigorously enforce arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (citation and quotation omitted), and resolve "any doubts concerning the scope of arbitrable issues" in favor of arbitration. *Sanchez*, 762 F.3d at 1146 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25). However, "when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944–45 (1995)); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (stating that courts should only apply the presumption of arbitrability when there is a validly formed and enforceable arbitration agreement).

"[T]he first task of a court asked to compel arbitration of a dispute is [typically] to determine whether the parties agreed to arbitrate that dispute." *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1097 (10th Cir. 2014) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). After a court has determined that an arbitration agreement exists, section 2 of the FAA provides that the agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "There are two types of validity challenges under § 2: One type challenges specifically the validity of the agreement to arbitrate, and [t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,*

4

the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (citation and internal quotations omitted).  The latter type of validity challenge does not prevent a court from enforcing the arbitration agreement.  *Id.*  However, courts must consider challenges to the validity of the arbitration agreement itself before ordering compliance with that agreement.  *Id.* at 71.

Additionally, "[arbitration] agreements which require the arbitration of statutory claims are only enforceable under the FAA so 'long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.'"  *Sanchez*, 762 F.3d at 1148 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). This is because "an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum."  *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999).

## III.  ANALYSIS

Defendants argue that the Court should compel arbitration because (1) the FAA governs the agreement and dictates that the claims are arbitrable; and (2) all parties mutually assented to the arbitration clause, making it an enforceable contract.  Docket No. 19 at 9-11.  Plaintiffs do not dispute that the FAA governs the agreement or that they voluntarily signed the contract; rather, they argue that the arbitration clause is unenforceable.  Docket No. 27 at 3.  Specifically, plaintiffs argue that the arbitration clause is unenforceable because: (1) the IC agreement impermissibly circumvents the requirements of the FLSA, the CWCA, and the COMPS Order by misclassifying plaintiffs as independent contractors to avoid paying them overtime wages; (2) the

5

arbitration clause prevents plaintiffs from effectively vindicating their statutory rights; (3)
the arbitration clause requires plaintiffs to share the costs of arbitration equally, which
renders the entire arbitration clause unenforceable; and (4) the statutes creating the
CWCA and COMPS Order claims confer a specific right to initiate a civil action which
cannot be waived.  *Id.* at 3-11.  Alternatively, plaintiffs argue that their claims do not fall
within the scope of the arbitration clause.  *Id.* at 11-13.  Because no party disputes that
they agreed to arbitrate this case, the Court finds that an arbitration agreement exists.
The Court will next analyze plaintiffs' arguments that the arbitration clause is not
enforceable.[3]

### A. <u>Enforceability of the IC Agreement as a Whole</u>

Plaintiffs argue that IC Agreement as a whole is enforceable because it
impermissibly circumvents their right to receive overtime pay, thus making the whole
contract (including the arbitration clause) unenforceable.  *Id.* at 3-6.

Plaintiffs' argument is unpersuasive.  To the extent that plaintiffs are arguing that,
because the IC Agreement, other than the arbitration clause, is unenforceable and
therefore the arbitration clause is unenforceable as well, the Court disagrees.  "[A]
party's challenge to another provision of the contract, or to the contract as a whole,
does not prevent a court from enforcing a specific agreement to arbitrate."  *Rent-A-Ctr.*,
561 U.S. at 70.  Instead, "a challenge to the validity of the contract as a whole, and not
specifically to the arbitration clause, must go to the arbitrator."  *Buckeye Check*

---

[3] Many arbitration clauses state that disputes over the validity of the arbitration
clause are themselves subject to arbitration.  *See Agrihouse, Inc. v. Agrihouse, L.L.C.*,
No. 08-cv-02404-WYD-MJW, 2009 WL 1033763, at *4 (D. Colo. Apr. 16, 2009) (finding
that the arbitration agreement covers disputes over whether the agreement is valid).
The arbitration clause here does not contain such a provision and defendants do not
assert an argument that it does.

*Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006).  Accordingly, plaintiffs' argument that the contract as a whole is unenforceable does not affect whether this dispute should be arbitrated.  To the extent that plaintiffs are claiming that the subject matter of plaintiffs' claims, namely, the FLSA and Colorado wage laws, are not subject to arbitration, the Tenth Circuit in *Sanchez* held otherwise as to the FLSA.  *Sanchez*, 762 F.3d at 1148.  The Court will address plaintiffs' state law claims below.

### B.  Commercial Arbitration Rules

Plaintiffs argue that the arbitration clause is unenforceable because it requires that the parties abide by the Commercial Arbitration Rules of the American Arbitration Association ("AAA") (the "commercial rules").  Docket No. 27 at 6-7.  The commercial rules provide that "[a]ll other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties."  *Id.* at 7 (emphasis omitted); Docket No. 27-3 at 33.  Moreover, the party bringing the claim is responsible for the initial payment of administrative fees,[4] which, depending on the amount of the claim, can be thousands of dollars according to plaintiffs.  Docket No. 27 at 7-8; Docket No. 27-3 at 33; Docket No. 27-4 at 1-2.  Plaintiffs allege that under these rules, they would have to pay tens of thousands of dollars to pursue their claims.  Docket No. 27 at 8.  Both plaintiffs submitted declarations stating that they do not possess the funds to meet this expense and would likely have to file for bankruptcy if forced to pay for arbitration.  Docket No. 27-5 at 2, 4.  Therefore, plaintiffs argue that arbitration would be prohibitively expensive under the terms of the

---

[4] These fees are subject to final apportionment by the arbitrator.  Docket No. 27-3 at 33.

agreement, thus depriving them of a forum to effectively vindicate their rights.  Docket No. 27 at 6-9.

The Supreme Court has acknowledged that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating [his] statutory rights in the arbitral forum."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000).  Moreover, in the Tenth Circuit, "an arbitration agreement requiring a plaintiff to share in the costs of arbitration is unenforceable when the agreement effectively deprives the plaintiff of an accessible forum to resolve his statutory claim and vindicate his statutory rights."  *Daugherty v. Encana Oil & Gas (USA), Inc.*, No. 10-cv-02272-WJM-KLM, 2011 WL 2791338, at *10 (D. Colo. July 15, 2011) (citing *Shankle*, 163 F.3d at 1235).  For example, when analyzing an arbitration clause which required the plaintiff to pay fees he could not afford, the Tenth Circuit noted that it "placed [the plaintiff] between the proverbial rock and a hard place—it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum."  *Shankle*, 163 F.3d at 1235.  Thus, because the plaintiff had to choose between dismissing his case or pursuing arbitration he could not afford, the court found the arbitration clause unenforceable.  *Id.*

Defendants argue that the arbitration provision is nevertheless enforceable because the clause is silent about arbitration costs, because plaintiffs did not meet their burden to show that arbitration would be prohibitively expensive, and because plaintiffs could receive a hardship waiver that lowers or eliminates fees.  Docket No. 30 at 7-8.  None of these arguments make the provision enforceable.

First, the parties agree that silence about arbitration costs does not itself void an arbitration clause.  Docket No. 27 at 6-7; Docket No. 30 at 7; *see also Green Tree Fin. Corp.-Alabama*, 531 U.S. at 91 (holding that silence about arbitration costs "is plainly insufficient to render [arbitration clauses] unenforceable.").  However, here, the arbitration clause is not silent about costs; rather, it requires that the parties abide by the cost-splitting provision of the commercial rules.  *See* Docket No. 19-2 at 3-4; Docket No. 19-3 at 3-4 ("the parties agree to abide by the rules of the Commercial Arbitration Rules of the American Arbitration Association."); *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 379 (10th Cir. 2016) (holding that an arbitration clause that did not expressly mention arbitration fees and arbitrator costs was not silent on those subjects because it invoked the commercial rules).  Furthermore, other courts have found arbitration clauses that apply the commercial rules to be unenforceable.  *See id.* at 380-81 (finding a provision of an arbitration clause unenforceable because it required adherence to the commercial rules, which would require plaintiffs to pay more for arbitration than they could afford); *Daugherty*, 2011 WL 2791338, at *11 (same).

Defendants are correct that plaintiffs bear the burden of showing that arbitration would be prohibitively expensive under the commercial rules.  *See Green Tree*, 531 U.S. at 91 (stating that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").  There is no clear guidance regarding "'[h]ow detailed the showing of prohibitive expense must be' to support the conclusion that the provision . . . is unenforceable." *Sanchez*, 762 F.3d at 1149 (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 660 (6th Cir. 2003)).  Generally, courts in the Tenth Circuit have found a showing sufficiently detailed when it includes

9

some evidence establishing the likely cost of arbitration and affidavits from plaintiffs explaining that they cannot afford those costs. *See Shankle*, 163 F.3d at 1232, 1234-35 (finding that plaintiff met his burden when he provided evidence establishing how much the arbiter charges); *Perez v. Hosp. Ventures-Denver LLC*, 245 F. Supp. 2d 1172, 1173 n.3 (D. Colo. 2003) (finding that plaintiff met her burden when she provided evidence that arbitration costs are likely to exceed $15,000 and submitted an affidavit that she could not afford these costs); *Daugherty*, 2011 WL 2791338, at *11 (finding that plaintiffs met their burden when they calculated that arbitration would likely cost between $15,000 and $76,000 and submitted affidavits that they could not afford these costs); *Sanchez v. Nitro Lift Techs., L.L.C.*, 91 F. Supp 3d 1218, 1222-1223 (E.D. Okla. 2015) (finding that plaintiffs met their burden when they provided evidence regarding the average costs of arbitration); *but see Hickey v. Brinker Int'l Payroll Co., L.P.*, No. 13-cv-00951-REB-BNB, 2014 WL 622883, at *3-4 (D. Colo. Feb. 18, 2014) (finding that plaintiffs did not meet their burden because their estimate of the cost of arbitration was based on hearsay and was speculative).

Here, plaintiffs estimate that they would have to put up tens of thousands of dollars to pursue arbitration. Docket No. 27 at 8. They note that "'[t]he typical employment case averages between fifteen to forty hours of arbitrator time.'" *Id.* at 8 n. 7 (quoting *Shankle*, 163 F.3d at 1235 n.5). They further assert that the arbitration will likely take even more time if it is able to proceed as a collective and/or class action. *Id.* Plaintiffs do not estimate the hourly rate of the arbitrator. However, plaintiffs cite *Daugherty*, which involves very similar facts to this case. *Id.* There, the plaintiffs alleged that they were deprived of significant overtime pay because they signed

10

independent contractor agreements. *Daugherty*, 2011 WL 2791338, at *1-2. The plaintiffs further alleged that the arbitration clause was unenforceable because it applied the commercial rules. *Id.* at *11. Using a formula which estimated the likely hourly rate of the arbitrators, the plaintiffs calculated that arbitration would likely cost between $15,000 and $76,000. *Id.* Given the similarity of the facts between the two cases and plaintiff's citation to *Daugherty*, the Court finds that plaintiffs' estimate that application of the commercial rules would require them to pay tens of thousands of dollars is reasonably supported. In addition, plaintiffs have submitted declarations that they would not be able to afford this expense. Docket No. 27-5 at 2, 4, ¶¶ 9, 9. Accordingly, plaintiffs have met their burden to show arbitration under the commercial rules would be prohibitively expensive.

Defendants argue that arbitration would not be prohibitively expensive because there is a possibility that plaintiffs could obtain a hardship waiver. Docket No. 30 at 8; Docket No. 30-1. However, the Tenth Circuit has already considered and rejected this argument. In *Nesbitt*, 811 F.3d at 378 (citing *Shankle*, 163 F.3d at 1234 n.4), the court found that the mere possibility of plaintiffs getting their fees reduced would not provide sufficient encouragement for them to risk advancing such large fees. Because the fee-waiver is not guaranteed, it does not rectify the prohibitive expense of arbitration. *Id.* at 378-79. The Court finds that the arbitration clause's incorporation of the commercial rules makes the arbitral forum inaccessible to plaintiffs and deprives them of the ability to vindicate their FLSA rights. Accordingly, the portion of the arbitration clause which states "that the parties agree to abide by the rules of the Commercial Arbitration Rules of the American Arbitration Association" is unenforceable.

C. <u>Severability</u>

The Court will analyze whether the provision of the arbitration clause that requires the parties to abide by the commercial rules can be severed from the rest of the arbitration clause.[5]

Several courts in this circuit have relied on the absence of a savings clause to hold that unenforceable terms were not severable, and hence the arbitration clause is not enforceable as a whole.  *See, e.g.*, *Perez*, 245 F. Supp. 2d at 1174; *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1375 (D. Colo. 2014); *Daugherty*, 2011 WL 2791338 at *12.  However, "the courts in those cases did not rely on Colorado law or analyze the parties' intent regarding severability."  *Green v. Fishbone Safety Sols., Ltd.*, 303 F. Supp. 3d 1086, 1093 (D. Colo. 2018).  Colorado law holds that a provision in an agreement can be severable without a severability clause so long as the parties intended that the provision can be severed.  *CapitalValue Advisors, LLC v. K2D, Inc.*, 321 P.3d 602, 607 (Colo. App. 2013).  Thus, "in determining whether a contract is severable, '[t]he primary objective is to ascertain the intent of the contracting parties.'"  *Id.* at 606 (quoting *John v. United Advertising, Inc.*, 165 Colo. 193, 198-99 (1968)).

Here, the Court finds that the primary purpose of the arbitration clause is to require that disputes between the signatories about the IC Agreement be resolved through arbitration.  *See S. Wash. Assocs. v. Flanagan*, 859 P.2d 217, 220 (Colo. App. 1992) (finding that the primary purpose of an arbitration agreement was to submit an issue to arbitration).  Thus, the Court finds that the intent of the parties is to submit such

---

[5] Whether an unenforceable provision of an arbitration agreement is severable is a matter of state law.  *See Kepas v. eBay*, 412 F. App'x 40, 49-50 (10th Cir. 2010) (unpublished) (applying California law to determine whether objectionable term in arbitration agreement was severable).

disputes to arbitration.  Moreover, the Court finds that determining how to assess the fees for and split the costs of the arbitration is collateral to that primary purpose.  *See Kepas*, 412 F. App'x at 50 (finding that a provision in an arbitration agreement regarding which party bears the costs was collateral to the central purpose of providing a mechanism to resolve disputes).  Therefore, the Court finds that the unenforceable provision in the arbitration clause is severable, and the arbitration clause otherwise remains enforceable.  *See Green*, 2017 WL 11545529, at *5 (finding that two unenforceable provisions "do not affect the primary purpose or object of the agreement, which is to submit employment disputes to arbitration," and therefore holding that the unenforceable provisions are severable).

The arbitration clause states that "[t]he parties agree that any disputes are to be arbitrated through the American Arbitration Association and that the parties agree to abide by the rules of the Commercial Arbitration Rules of the American Arbitration Association."  Docket No. 19-2 at 3; Docket No. 19-3 at 3.  As noted above, the Court has found the arbitration clause's application of the commercial rules to be unenforceable and has severed that portion of the arbitration clause.  Thus, the arbitration clause is now silent as to how arbitration expenses are allocated between the parties.  However, the arbitration clause nevertheless specifies that the parties agree that any disputes are to be arbitrated "through the American Arbitration Association."  Docket No. 19-2 at 3; Docket No. 19-3 at 3.  The AAA's Employment Rules (the "employment rules") state that "[t]he parties shall be deemed to have made these [Employment] Rules a part of their arbitration agreement whenever they have provided . . . for arbitration by the AAA of an employment dispute without specifying the particular

13

rules."[6]  Docket No. 27-1 at 6.  The employment rules also state that "[a]ny disputes regarding which AAA rules apply shall be initially decided by the AAA."  *Id.*  Thus, any disputes regarding what rules govern the arbitration clause in light of the Court's ruling are properly decided by the AAA at the outset.

### D.  Arbitrability of CWCA and COMPS Order Claims

Plaintiffs argue that the arbitration clause is unenforceable as to plaintiffs' CWCA and COMPS Order claims, Docket No. 27 at 9-10, because "[t]he CW[C]A confers on employees a specific right to initiate a civil action in a court of competent jurisdiction." *Id.* at 9 (citing C.R.S. §§ 8-4-109-111, 120, 125).  Moreover, they state that, in *Lambdin v. Dist. Ct. In & For 18th Jud. Dist. of Cnty. of Arapahoe*, 903 P.2d 1126, 1131 (Colo. 1995), the Colorado Supreme Court held that arbitration agreements that deprive plaintiffs of the right to pursue a civil remedy under the CWCA for past due wages are void.[7]

*Lambdin*, however, did not consider how the FFA factors into this analysis.  *Id.* at 1131-32.  That issue was before the Colorado Court of Appeals in *Grohn v. Sisters of Charity Health Servs. Colo.*, 960 P.2d 722, 728 (Colo. App. 1998), where the court held

---

[6] Application of the employment rules would ameliorate plaintiffs' concerns about the expense of the arbitration.  The employment rules state that "[a]ll expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne by the company unless they agree otherwise."  Docket No. 27-1 at 36. Moreover, the filing fee for individuals before a single arbitrator is "capped at $350, unless the clause provides the individual pay less."  Docket No. 27-2 at 1.  Thus, it is unlikely that the expenses of arbitration under the employment rules would be prohibitively expensive.

[7] Defendants argue that the CWCA claim is arbitrable because the plain language of the CWCA only applies to employers/employees, not independent contractors.  Docket No. 30 at 6.  However, the crux of plaintiffs' claims is that they were employees who defendants misclassified as independent contractors.  Thus, defendants' argument merely begs the question of what the arbitrator or court would decide.

14

that, "[i]n enacting § 2 of the FAA, Congress withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."  Thus, when the FAA applies to an arbitration clause, the Supremacy Clause requires that CWCA claims are not statutorily exempt from arbitration.  *Id.* at 727.  Here, plaintiffs agree that the IC Agreement is subject to the FAA.  Docket No. 27 at 3.  Accordingly, plaintiffs' CWCA claim is arbitrable.  Moreover, the Court finds that the logic of *Grohn* is also applicable to the COMPS Order claim, and that the Supremacy Clause subjects plaintiffs' COMPS Order claim to arbitration as well.

### E.  Scope of the Arbitration Clause

In a final effort to avoid arbitration, plaintiffs argue that even if the arbitration clause is enforceable, the claims in this case do not fall within its scope.  Docket No. 27 at 11-12.  The arbitration clause requires arbitration of "all disputes and differences under the [IC Agreement]" to an arbitrator.  Docket No. 19-2 at 3-4; Docket No. 19-3 at 3-4.  Plaintiffs argue that this language does not encompass their claims because it does not reference employment classification or statutory claims.  Docket No. 27 at 12.

Plaintiffs concede that that the arbitration clause is broad.  *Id.* at 13.  When there is a broad arbitration clause, "in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *Loc. 5-857 Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Conoco, Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003) (citation omitted).  Plaintiffs do not provide any "forceful evidence" that their claims were meant to be excluded from arbitration.  Plaintiffs' claims arise from their alleged misclassification as independent contractors.  It is the IC Agreement that classifies

15

plaintiffs as independent contractors.  Thus, claims relating to this classification

constitute a dispute under the IC Agreement.  Accordingly, plaintiffs' claims fall within

the scope of the arbitration clause.

### F.  Administrative Closure

Pursuant to D.C.COLO.LCivR 41.2, "[a] district judge . . . may order the clerk to

close a civil action administratively subject to reopening for good cause."  Administrative

closure is "the practical equivalent of a stay."  *sPower Dev. Co., LLC v. Colo. Pub.*

*Utilities Comm'n*, No. 17-cv-00683-CMA-NYW, 2018 WL 5996962, at *4 (D. Colo. Nov.

15, 2018) (quoting *Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987)).  It is

common practice in this district for courts to administratively close cases pending

resolution of the parties' claims in arbitration.  *See, e.g.*, *Cochlear Ltd. v. Oticon Med.*

*AB*, No. 16-cv-01700-PAB-KMT, 2017 WL 4251927, at *4 (D. Colo. Sept. 25, 2017)

(denying motion to stay but administratively closing case pending resolution of claims

through arbitration).

Because this case will be stayed for an unknown period of time pending

arbitration, the Court finds good cause to administratively close this case pursuant to

D.C.COLO.LCivR 41.2 subject to being reopened for good cause shown.  Either party

may move to reopen the case at the end of the arbitration process or for other good

cause.

## IV.  CONCLUSION

It is therefore

**ORDERED** that Defendants' Motion to Compel Arbitration [Docket No. 19] is

**GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that the provision of IC Agreement which mandates that the parties abide by the Commercial Arbitration Rules of the American Arbitration Association is unenforceable.  It is further

**ORDERED** that the parties shall arbitrate their dispute according to the enforceable provisions of the arbitration agreement in accordance with this order.  It is further

**ORDERED** that this case is administratively closed, pursuant to D.C.COLO.L.CivR 41.2, subject to being reopened for good cause shown.  It is further

**ORDERED** that the parties shall file a status report with the Court within 15 days of completion of the arbitration process.

DATED March 30, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge